```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

ALISHA BEAM,                    )
                                )
     Plaintiff,                 )
                                )
                                )     Case No. 2:20-cv-46
                                )
BELLOWS FALLS VERMONT VILLAGE   )
CORPORATION, MUNICIPALITY OF    )
ROCKINGHAM, VERMONT, BELLOWS    )
FALLS VERMONT POLICE            )
DEPARTMENT, RONALD LAKE, and    )
MARIO CHECCHI,                  )
                                )
     Defendants.                )
```

**OPINION AND ORDER**

Plaintiff Alisha Beam brings this action claiming she was treated unlawfully while employed as a dispatcher and office administrator at the police department in Bellows Falls, Vermont.  Now before the Court is Sergeant Mario Checchi's motion to dismiss Counts Four and Five of the Amended Complaint.  Count Four alleges intentional infliction of emotional distress, while Count Five alleges defamation.  For the reasons set forth below, the motion to dismiss is **granted.**  Beam may amend her intentional infliction of distress claim within 30 days of this Opinion and Order.  Failure to amend within that time period will result in the dismissal of her claims against Checchi with prejudice.

**Factual Background**

The Amended Complaint alleges that Beam was a dispatcher and office administrator for the Village of Bellows Falls Police Department for approximately 17 years. Her duties included maintaining a radio log for each police officer in the department. The logs kept track of officer activities and were used by Bellows Falls police officers for reporting. The logs were also used by prosecutors and defense attorneys as case records.

Beam alleges that Sergeant Checchi continually refused to communicate with her, as when he would report to work without informing her. This lack of communication reportedly made Beam's job difficult, prevented maintenance of accurate logs, and impeded the department's ability to provide other officers with back-up coverage. The Amended Complaint alleges that Checchi also provided Beam with false information about criminal cases, made denigrating comments about her in her presence, and would openly refer to her as "bitch."

Beam allegedly complained many times to the Chief of Police and the village's municipal manager about Checchi's behavior. She claims that although Checchi was admonished several times his supervisors failed to take measures to protect her and, as a result, the conduct continued. The village manager allegedly

promised a complete investigation and resolution, but failed to follow through.

The Amended Complaint consists of five causes of action, two of which name Checchi. Count Four alleges that Checchi is liable for the tort of intentional infliction of emotional distress. Specifically, Beam claims that Checchi's refusal to communicate about whether he was on duty caused her severe emotional distress, since part of her job as dispatcher was to know whether an officer was on duty and available to respond to a call. Beam also claims that Checchi intentionally caused her distress by lying about the status of criminal cases. Checchi's alleged lies, hostility, and negativity reportedly caused Beam extreme emotional harm manifesting in depression, anxiety, stomach aches and ulcers.

Count Five alleges defamation. Checchi is the only defendant named in Count Five. The Amended Complaint alleges that he would frequently enter Beam's dispatch room, stand behind the upright portion of her desk so that she could not see him, and distract her and make her anxious by whispering to other people in the room. On October 24, 2019, Checchi allegedly made false and negative statements to third parties about Beam during a K-9 training at the Vermont Police Academy ("VPA"). He also allegedly made false statements to members of her family, resulting in family turmoil and further emotional

3

distress. The Amended Complaint alleges that Checchi's defamatory statements caused Beam to resign from her position due to the impacts on her health. For damages, Beam claims both monetary and reputational losses.

Checchi now moves the Court to dismiss the claims against him, arguing that the facts alleged do not state plausible claims for relief, and that Beam's claims are barred by the state law statute of limitations. Beam opposes the motion to dismiss, but informs the Court that she will not pursue her defamation claim. The Court will therefore address only the claim for intentional infliction of emotional distress and Checchi's statute of limitations argument.

## Discussion

### I. Motion to Dismiss Standard

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Mere labels and legal conclusions will not

suffice, nor will "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

A motion to dismiss an action as barred by a statute of limitations is generally treated as a motion to dismiss under Rule 12(b)(6), rather than a Rule 12(b)(1) motion for dismissal for lack of jurisdiction. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). When reviewing the motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations set forth in the Amended Complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

## II.  Intentional Infliction of Emotional Distress

Checchi argues that Beam's factual allegations fall short of a plausible claim of intentional infliction of emotional distress under Vermont law. The elements of an intentional infliction of emotional distress ("IIED") claim in Vermont are: "(1) conduct that is extreme and outrageous, (2) conduct that is intentional or reckless, and (3) conduct that causes severe emotional distress." *Thayer v. Herdt*, 155 Vt. 448, 455, 586 A.2d 1122, 1126 (1990). Accordingly, "[a]n IIED claim can be sustained only where the plaintiff demonstrates 'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the

5

suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1, 955 A.2d 1082 (quoting *Boulton v. CLD Consulting Eng'rs, Inc.*, 175 Vt. 413, 427, 834 A.2d 37, 49 (2003)).

The Vermont Supreme Court has described the IIED standard as "a heavy burden that requires plaintiff to show" conduct "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable.'" *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265, 277, 79 A.3d 854, 863 (2013) (quoting *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 848 A.2d 344)). The standard for outrageousness is objective. *Id.* ¶ 15. "[A] plaintiff must demonstrate legal harm resulting from inflicted distress so severe that no reasonable person could be expected to endure it." *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57, 644 A.2d 316, 319 (1994). "It is for the court to determine as a threshold question whether a jury could reasonably find that the conduct at issue meets this test." *Jobin v. McQuillen*, 158 Vt. 322, 609 A.2d 990, 993 (1992).

Taking the allegations in the Amended Complaint as true, Beam alleges verbal abuse and insults, lack of communication, and general workplace harassment resulting in embarrassment and

anxiety. These actions, she contends, were sufficiently extreme and outrageous to constitute IIED. Checchi argues that Beam's allegations describe mere workplace friction that was not objectively outrageous under Vermont law.

Beam relies primarily on two cases for support. In the first, *Grega v. Pettengill*, 123 F. Supp. 3d 517, 550 (D. Vt. 2015), the plaintiff was convicted of murdering his wife and spent over seventeen years in prison, only to be released after presenting exculpatory DNA evidence. After his release he sued various officials involved in the murder investigation, including a cause of action for IIED based upon his claim that certain evidence had been fabricated. Judge Crawford held that while a failure to properly investigate a crime scene does not constitute extreme or outrageous conduct, fabrication of evidence in order inculpate a suspect, resulting in the emotional harm that accompanies many years spent in prison, could support a claim of IIED.

In the second case on which Beam relies, *Thayer v. Herdt*, 155 Vt. 448, 586 A.2d 1122, 1126 (1990), plaintiff alleged that defendant was informed her daughter had been abducted, but failed to initiate a search. Plaintiff also alleged that defendant prevented her and her husband from conducting a search, and that defendant was aware of the abductor's identity. Failures to respond to the abduction report allegedly resulted

7

in the rape and death of the daughter, and great emotional distress to plaintiff.  Reversing the trial court's ruling on the pleadings, the Vermont Supreme Court held that "it cannot be said as a matter of law that the acts here alleged do not rise to the level of extreme and outrageous conduct which would allow recovery."  *Thayer*, 155 Vt. at 456.

In both *Grega* and *Thayer* the conduct alleged was more extreme than that presented here.  Those cases involved serious criminal activity, including the murder of plaintiffs' family members, and allegedly-egregious conduct in relation to that activity.  This case presents allegations of improper workplace conduct resulting in embarrassment and severe stress.  While the Court accepts as true both the allegations of such conduct and the emotional and physical impacts thereof, the cited cases do not support Beam's cause of action for IIED.

Several Vermont cases have addressed IIED in the workplace, though the cases generally involve actions by supervisors rather than co-workers.  For example, in *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 576 A.2d 441 (1990), the employer accused a long-time employee of theft, interrogated the employee for several hours without a break, badgered him into signing a confession, then fired him.  *Id.* at 296-97.  The company also defamed Crump by publishing reports that he was a problem employee and a thief.  *Id.* at 288-89, 296-97.  The Vermont

8

Supreme Court affirmed the jury's verdict in favor of the plaintiff, holding that "if the manner of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis plaintiff, it may provide grounds for the tort action." *Id.* at 297.

With respect to allegations of mistreatment, particularly by supervisors, Vermont law holds that "'mere insults, indignities, or annoyances that are not extreme or outrageous'" will not give rise to liability. *Denton v. Chittenden Bank*, 163 Vt. 62, 67, 655 A.2d 703, 707 (1994) (citing Restatement (Second) of Torts at § 46 cmt. e (1965); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991) (although intentional and systematic humiliation of employees often rises to level of illegality, it does not constitute extreme and outrageous conduct "except in the *most* unusual cases") (emphasis in original)). In *Denton*, plaintiff alleged that a supervisor had embarked "on an insulting, demeaning, and vindictive course of conduct toward Denton that included ridicule, invasions of privacy, intentional interference . . . and an unreasonable workload, all of which so affected Denton's physical and mental state that he was forced to leave work on permanent disability." *Id.* at 63. The trial court granted summary judgment in favor of the employer and the Vermont Supreme Court affirmed, declining "to extend liability to a series of indignities." *Id.* at 67.

"Absent at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct in the workplace, incidents that are in themselves insignificant should not be consolidated to arrive at the conclusion that the overall conduct was outrageous."  *Id.*

In *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 56, 644 A.2d 316, 319 (1994), the plaintiff was suspended pending further investigation due to suspicion that he had tried to purchase illegal drugs during working hours.  Plaintiff denied the allegation.  After he cancelled a meeting with the executive director to discuss the matter, plaintiff was terminated by letter.  His IIED allegation claimed that his firing was suspicious given his recent complaints of unpaid wages and sexual harassment, that his employer had conspired to terminate him, and that the termination letter was outrageous.  The Vermont Supreme Court affirmed the trial court's summary judgment ruling in favor of the employer, distinguishing the facts of *Crump* and concluding that "Plaintiff has failed to identify any conduct that would meet the legal standard for outrageousness."  162 Vt. at 56 (citing *Staples v. Bangor Hydro-Electric Co.*, 561 A.2d 499, 501 (Me. 1989) (humiliation at staff meetings and demotion without cause fell short of conduct that exceeds "all possible bounds of decency" and that must be

regarded as "atrocious and utterly intolerable in a civilized community")).

In this case, as noted above, the Court is presented with allegations against a co-employee rather than a supervisor or employer.  Accordingly, the concerns raised in *Crump* regarding abuse of power do not arise.  Even assuming a supervisory relationship, however, the facts alleged in this case do not rise noticeably above those alleged in *Denton*.  While *Denton* involved insults, ridicule, interference and other demeaning behavior, Beam similarly claims non-cooperation, interference, insults and abusive language.  The Vermont Supreme Court found that such conduct does not "transcend[] the ignoble and vast realm of unpleasant and often stressful conduct in the workplace," *Denton*, 163 Vt. at 67, and this Court is bound by that state law precedent.

Accordingly, the Court finds that the Amended Complaint fails to state a plausible IIED claim under Vermont law.  If Beam has additional factual allegations that would support a plausible claim, she may assert them in an Amended Complaint.  Failure to so amend her pleadings within 30 days will result in the dismissal of the IIED claim against Checchi with prejudice.

**III. Statute of Limitations**

Because the Court is dismissing the IIED claim against Checchi, and Beam has withdrawn her defamation claim, the Court

11

need not address Checchi's argument that the claims against him are barred by the statute of limitations.  The Court nonetheless notes that in opposition to the motion to dismiss, Beam clarifies that although her period of employment spanned approximately 17 years, all factual claims in her Amended Complaint occurred within the three-year limitations period cited in Checchi's memorandum.

## Conclusion

For the reasons set forth above, Checchi's motion to dismiss (ECF No. 23) is **granted**.  Beam may amend her intentional infliction of emotional distress claim within 30 days of this Opinion and Order.  Failure to amend within that time period will result in the dismissal of her claims against Checchi with prejudice.

DATED at Burlington, in the District of Vermont, this 24th day of March, 2021.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge